UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM ROBERT SHAW,

    Plaintiff,

v.                                        Case No. 22-C-97

COUNTY OF MILWAUKEE, et al.,

    Defendants.

## DECISION AND ORDER

    Plaintiff William Robert Shaw, who is representing himself, brought this action against Defendants Milwaukee County and Matthew Johnston, who has been serving as the Milwaukee County Jail's Religious Programs Coordinator since 2020. Shaw is proceeding on (1) a First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Milwaukee County and Matthew Johnston based on allegations that they failed to provide Kosher meals with meat at the Milwaukee County Jail and/or failed to facilitate practice of his Jewish religion and (2) a Fourteenth Amendment equal protection claim against Johnston based on allegations that Johnston allocated significantly fewer resources to Jewish inmates at the Jail than to Christian or Muslim inmates. *See* Dkt. Nos. 1 & 8.

    On December 7, 2022, Defendants filed a motion for summary judgment. Dkt. No. 63. The Court granted Shaw a number of extensions to respond to the motion for summary judgment. In the Court's final order extending Shaw's deadline to respond to August 1, 2023, the Court warned that, if Shaw failed to respond to the motion by the deadline, the Court would accept all facts asserted by Defendants as undisputed, which would likely result in summary judgment being

granted in Defendants' favor and the case being dismissed. To date, Shaw has not responded to Defendants' motion. Shaw's failure to respond to Defendants' motion is itself grounds to grant the motion. *See* Civil L.R. 7(d) ("Failure to file a memorandum in opposition to a motion is sufficient cause for the court to grant the motion."). For this reason, and because the result is the same on the merits, the Court will grant the motion for summary judgment and dismiss the case.

## UNDISPUTED FACTS[1]

Shaw, who alleges he is a practicing Jew, arrived at the Milwaukee County Jail in February 2017. *Id.*, ¶¶1, 3. On January 28, 2020, about three years after being received at the Jail, Shaw submitted his first Religious/Vegetarian Dietary Request Form, requesting Kosher meals. *Id.*, ¶33. The Jail's religious program coordinator at the time approved the request, and Shaw received "lacto-ovo vegetarian meals." *Id.*, ¶¶33-34. Aramark, the food service vendor at the Jail, is responsible for all aspects of food services, including procurement, preparation, serving, and cleaning. *Id.*, ¶¶8, 14. Aramark is required under contract to accommodate religious food requests made by inmates. To comply with this requirement, Aramark provided lacto-ovo vegetarian meals to inmates requesting Kosher and Halal meals. *Id.*, ¶¶15, 22-26.

On May 27, 2020, about four months after making the request to receive Kosher meals, Shaw rescinded his request and was returned to the normal inmate diet. *Id.*, ¶35. On August 28, 2020, Shaw submitted a second Religious/Vegetarian Dietary Request Form, which was approved by Johnston. *Id.*, ¶36. Shaw was provided lacto-ovo vegetarian meals by Aramark to accommodate his request. *Id.* Less than a month later, on September 10, 2020, Shaw rescinded that request and returned to the standard inmate diet. *Id.*, ¶37. In April 2021, Shaw began ordering

---

[1] Because Shaw did not respond to Defendants' motion for summary judgment or proposed findings of fact, the Court accepts Defendants' proposed findings of fact as true. *See* Civil L.R. 56(b)(4); Fed. R. Civ. P. 56(e)(3).

2

various non-Kosher foods. *Id.*, ¶40. Shaw ordered nine bags of Flaming Hot Cheetos from the commissary on April 12, 2021, and April 19, 2021. *Id.*, ¶46. On May 3, 2021, Shaw submitted a grievance request demanding receipt of missing bacon bits that he had been waiting three weeks to receive. *Id.* On June 13, 2021, Shaw again requested delivery of his bacon bits. *Id.*, ¶41. Shaw also received Cheetos on May 14, 2021; September 21, 2021; and October 18, 2021. *Id.*

On October 26, 2021, Shaw submitted his third Religious/Vegetarian Dietary Request Form, which was approved by Johnston. *Id.*, ¶38. Shaw was provided lacto-ovo vegetarian meals by Aramark to accommodate his request. *Id.* On December 13, 2021, Shaw complained about not receiving non-Kosher foods, such as the bacon double barbecue cheeseburger his family ordered him. *Id.*, ¶42. On December 15, 2021, Shaw submitted another request for redelivery of the barbecue cheeseburger. *Id.*, ¶43. Shaw complained on January 31, 2022, that he still had not received the double bacon cheeseburger that his family ordered in November. *Id.*, ¶44. Shaw received Cheetos on January 14, 2022; March 25, 2022; and April 1, 2022. *Id.*, ¶46. On or around May 23, 2022, the Jail began providing Shaw with pre-packaged Kosher meals with meat. *Id.*, ¶39. Shaw consistently received the pre-packed Kosher meals. *Id.*

The Jail provides other religious accommodations as well. Although the Jail will not purchase religious items for inmates, it will deliver permissible items that are purchased by the inmate or are left at the Jail by approved sources, such as the religious volunteer. *Id.*, ¶13. The Jail has one Jewish volunteer for religious services. *Id.*, ¶18. Shaw requested to see and met with that Jewish volunteer numerous times during his incarceration. *Id.*, ¶19.

The Jail also has one Muslim volunteer for religious services. *Id.*, ¶17. During the month of Ramadan, Muslim inmates who seek to observe Ramadan are provided an early breakfast 30 minutes before dawn and a hot meal immediately after sunset. *Id.*, ¶¶29-31. Due to the significant

number of inmates that observe Ramadan, and the time and resources needed to accommodate observance, the Jail posts a sign-up sheet to allow staff to adjust their schedules and to inform Aramark of the number of necessary changes. *Id*., ¶32.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. First Amendment and RLUIPA Claims

Shaw asserts that Milwaukee County and Johnston violated the First Amendment and RLUIPA by failing to provide Kosher meals with meat at the Milwaukee County Jail and failing to facilitate practice of his Jewish religion. The Free Exercise Clause of the First Amendment

4

"prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citation omitted). For the First Amendment's protection to attach, a person's religious belief must be sincerely held. *See Vinning-El v. Evans*, 657 F.3d 591, 593 (7th Cir. 2011) ("Sincere religious beliefs must be accommodated . . . but non-religious beliefs need not be." (citation omitted)). Under RLUIPA, the plaintiff bears the initial burden of proving that a prison policy "implicates his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360 (2015). "Although RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, a prisoner's requested accommodation must be sincerely based on a religious belief and not some other motivation." *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (internal quotation marks and citation omitted).

Defendants assert that Shaw has not established that his requested accommodation for Kosher meals was sincerely based on a religious belief. About three years after being received at the Jail, Shaw submitted his first Religious/Vegetarian Dietary Request Form, requesting Kosher meals on January 28, 2020. Four months after making his request to receive Kosher meals, Shaw rescinded the request on May 27, 2020, and returned to the normal inmate diet. On August 28, 2020, Shaw submitted a second Religious/Vegetarian Dietary Request Form, but rescinded the request less than a month later, on September 10, 2020. From April 2021 to October 2021, Shaw ordered various non-Kosher foods, including bacon bits and Flaming Hot Cheetos. On October 26, 2021, Shaw submitted his third Religious/Vegetarian Dietary Request Form. Even though Shaw was provided lacto-ovo vegetarian meals, Shaw continued to order non-Kosher foods, including double bacon barbecue cheeseburgers and Cheetos, between November 2021 and April 2022. Looking at this history and Shaw's requests for non-Kosher food, and absent any declaration

5

from Shaw attesting to his sincerely held religious beliefs, no reasonable jury could conclude that Shaw had sincerely held beliefs in the precepts of Judaism or to comply with the dietary restrictions thereof. Absent any evidence from Shaw to the contrary, Shaw's First Amendment and RLUIPA claims fail.

**B. Fourteenth Amendment Claim**

Shaw also asserts that Johnston violated the Fourteenth Amendment by allocating significantly fewer resources to Jewish inmates at the Jail than to Christian or Muslim inmates. To survive summary judgment on a Fourteenth Amendment equal protection claim, Shaw must put forth evidence that would allow a reasonable jury to infer that Johnston intentionally treated inmates differently because of their religion. *See Lisle v. Welborn*, 933 F.3d 705, 719-20 (7th Cir. 2019). Indeed, jails cannot discriminate against a particular religion "except to the extent required by the exigencies of prison administration." *Maddox v. Love*, 655 F.3d 709, 719-20 (7th Cir. 2011). Economic and safety constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another, but the treatment of all inmates must be "qualitatively comparable." *Id*.

Shaw alleges in his complaint that Johnston provides special accommodations to Muslim inmates to allow them to celebrate their religious holidays and that such accommodations are not provided to Jewish inmates. Shaw maintains that the Jail posts a sign-up sheet for Muslim holidays but not for Jewish holidays. But because the Muslim religion requires fasting between sunrise and sunset during the month of Ramadan, the Jail posts a sign-up sheet on the wall to facilitate organizing this largescale religious event. The sign-up sheet allows staff to adjust their schedules and to inform Aramark of the number of necessary mealtime changes. Shaw has not identified any fasting requirements that would require a similar sign-up sheet be posted for a Jewish holiday.

6

In other words, the difference in food accommodations between Jewish inmates and Muslim inmates is caused by the different tenets of their religion, along with the Jail's administrative needs, not invidious discrimination. Further, inmates requesting Halal meals receive the same lacto-ovo meals as inmates requesting Kosher meals. Based on these undisputed facts, no reasonable jury could find a Fourteenth Amendment equal protection violation. Accordingly, the Court grants summary judgment in favor of Johnston on Shaw's Fourteenth Amendment claim.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 63) is **GRANTED**. The case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of September, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.